```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


DAVID CATRINO                  *
                               *
v.                             *
                               *   Civil Action No. WMN-09-505
TOWN OF OCEAN CITY             *
                               *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is Defendant's motion to dismiss, or in the alternative, for summary judgment.  Paper No. 7.  The motion is fully briefed.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

Plaintiff brings this action asserting a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA).[1]  Plaintiff was employed by the Defendant Town of Ocean City as a police officer beginning in 1994.  In February of 2007, Plaintiff informed Defendant that he suffered from diabetes and requested that, as an accommodation for his

---

[1] For reasons not readily apparent, Plaintiff in his opposition repeatedly refers to his claim as a "Title VII" claim.  The Court must assume that this is simply a clerical error as the Amended Complaint is clearly brought under the ADA, see Amend. Compl. at 1, and there is no likely Title VII claim that could arise from the allegations in the Amended Complaint.

diabetes, he be permitted to take regular meals during non-emergency situations.  Plaintiff readily acknowledges that Defendant accommodated this request without exception until July 21, 2007.

Plaintiff alleges in the First Amended Complaint[2] that on that date, after working for several hours in the summer heat without eating, he began to feel ill.  Plaintiff requested that a fellow officer complete the arrest of a driver pulled over by Plaintiff so that Plaintiff could go get a meal.  On his way to get food, however, Plaintiff's supervisor, Corporal Albert Custer, ordered Plaintiff to report to the City's Public Safety Building.  When Plaintiff explained that he needed to eat and requested that the meeting be postponed, his request was denied.  Plaintiff reported to the Public Safety Building only to learn that he had been summoned there "for no reason whatsoever."  Amend. Compl. ¶ 11.

---

[2] Plaintiff filed the original complaint on March 3, 2009.  In addition to filing an opposition to Defendant's motion to dismiss that complaint, Plaintiff also filed a First Amended Complaint.  Paper No. 9.  Defendant moved to strike the amended complaint, arguing that Plaintiff needed leave of Court to file an amended complaint after the filing of a "responsive pleading."  Paper No. 12 (citing Rule 15(a) of the Federal Rules of Civil Procedure and Local Rule 103.6).  While Defendant's is not an uncommon error, a motion to dismiss is not a responsive pleading for purposes of Rule 15.  Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1068 n. 1 (4th Cir. 1993).  Therefore, leave of Court was not required to file an amended complaint and Defendant's motion to strike will be denied.

Plaintiff alleges that he was then ordered by Corporal Custer to report to the foot of the Route 50 bridge for a non-emergency task.  Plaintiff performed that task and then, out of medical necessity, left his post to go home shortly before his scheduled shift was to expire.  Id. ¶¶ 11, 8.  According to the Amended Complaint, Corporal Custer knew about Plaintiff's diabetes and the accommodation he needed because of that condition and also knew that Plaintiff left his post to go home to attend to his medical condition.  Id.  Nonetheless, Defendant took the position that Plaintiff's leaving his post was a voluntary resignation and refused to allow Plaintiff to return to work.  Plaintiff adamantly denies that he voluntarily separated from his employment.  Id. ¶¶ 8, 12, 15.  Instead, he asserts that he was "constructively discharged."[3]  Id. Preamble and ¶ 11.

Pursuant to a provision in the collective bargaining agreement (CBA) entered into between Defendant and Plaintiff's Union, the Ocean City Lodge No. 10, Fraternal Order of Police (FOP), Plaintiff filed a grievance challenging the termination of his employment.  That provision states that any "dispute

---

[3] In two places in his opposition, Plaintiff refers to the theory of his case as one of "constructive desertion."  Opp'n at 2, 5. Because there is no such theory associated with the ADA or other antidiscrimination statutes, the Court can only assume that, like Plaintiff's repeated reference to Title VII, this is merely a clerical error.

3

concerning the application or interpretation of the terms of this Agreement or a claimed violation, misrepresentation or misapplication of the rules or regulations of the Mayor and City Council of Ocean City, Maryland, municipal corporation, or the employer affecting the terms and conditions of employment" is to be settled under the grievance and arbitration process set forth in the CBA.  CBA Article 6.  This provision also states that the "arbitrator's decision shall be final and binding on all parties."  Id.

Plaintiff's grievance was tried before an arbitrator on February 18, 2008.  Both Plaintiff and Corporal Custer testified at the arbitration and Plaintiff was represented by counsel.  On March 6, 2008, the arbitrator issued a 20-page decision denying Plaintiff's grievance.  Based upon his interpretation of a particular provision in the Ocean City Employee Handbook, the arbitrator concluded that Plaintiff "voluntarily terminated his employment with the Ocean City Police Department."  Arbitration Award at 20.  This provision upon which the arbitrator relied states, in pertinent part, "an employee who verbally quits and walks off the job will be seen to have voluntarily terminated." Employee Handbook § 6.8.  The arbitrator opined that this "stark and specific language . . . says quite plainly and unambiguously that a voluntary termination occurs as a result of two actions:

4

1) a verbal quit and 2) walking off the job." Arbitration Award at 18. Crediting Corporal Custer's testimony that Plaintiff told him at the foot of the bridge, "I've had it. I quit. I'm leaving," the arbitrator found the first element. Id. at 19.[4] Also crediting Corporal Custer's testimony that he told Plaintiff he could not leave his station, the arbitrator found that that Plaintiff "walked off the job without permission," thus fulfilling the second requirement. Id. at 20.[5]

Plaintiff filed a timely appeal of the arbitrator's decision in the Circuit Court for Worchester County. Catrino v. Mayor and City Council of Ocean City, Case No. 23-C-08-0586. Under Maryland law, however, judicial review of an arbitration award is very limited. See Md. Code Ann., Cts. & Jud. Proc. § 3-224(b) (listing the limited grounds upon which an award can be vacated, including, inter alia, where the award "was procured by corruption, fraud, or other undue means"). Plaintiff argued to the Circuit Court that he had new evidence that Corporal Custer had provided false testimony at the arbitration. Plaintiff

---

[4] Plaintiff had testified that he simply stated to Corporal Custer that he "ought to just quit." Id. at 9.

[5] Plaintiff testified that he understood that Corporal Custer had given him permission to leave once he checked on the identity of an individual on the bridge that Custer believed might have been subject to a warrant. Once Plaintiff ran the check on that individual, he believed he had permission to leave his post. Id. at 9.

proffered two witnesses who he asserted would support his version of the events at the bridge and testify that they heard Corporal Custer recount that Plaintiff had simply said that he "ought to just quit." Compl. & Pet. to Vacate Award at 5-6. The Circuit Court dismissed Plaintiff's appeal with a summary order on July 10, 2008.

In moving for dismissal of the ADA claim brought in this Court, or for summary judgment on that claim, Defendant raised three primary arguments, all related to the arbitration award and closely related to one another. In its first argument, Defendant asserted that, under the CBA, Plaintiff was required to submit to arbitration the issue of whether he voluntarily terminated his employment and, now that the arbitrator has ruled against him on that issue, Plaintiff is bound by that determination. Defendant contended that, because the only adverse employment action that had been identified by Plaintiff was his termination, the arbitrator's conclusion that Plaintiff voluntarily quit his position was fatal to his ADA claim.[6]

In Defendant's second argument, it contended that certain anti-discrimination language contained in the CBA constituted a

---

[6] The Court notes that this is not necessarily the case. Where a plaintiff bases his ADA claim on a theory of constructive discharge, he can quit his position but also argue he was compelled to quit because of the employer's discriminatory treatment. See, infra.

6

waiver of Plaintiff's right to proceed with an ADA claim in federal court.  Article 5 of the CBA states that:

> The provisions of this Agreement shall be applied equally to all employees in the bargaining unit for which the FOP is the certified representative without discrimination as to age, sex, marital status, race, creed, color, national origin, political affiliation, disability as defined in the Americans with Disabilities Act (ADA), or sexual orientation.

CBA Article 5.  Citing the Supreme Court's very recent decision in <u>114 Penn Plaza LLC v. Pyett</u>, 129 S. Ct. 1456 (2009), and the Fourth Circuit's decision in <u>Safrit v. Cone Mills Corp.</u>, 248 F.3d 306 (4th Cir. 2001), Defendant asserted that the language in Article 5 of the CBA, combined with the language of Article 6, represents a "clear and unmistakable" agreement to arbitrate any statutory antidiscrimination claims.  Mot. at 11-12.  Defendant further asserted that Plaintiff "put his claim of disability discrimination at issue before the arbitrator" and lost and now must be bound to that decision.  <u>Id.</u> at 13.

Defendant's third argument presented in its motion invoked the doctrine of collateral estoppel.  Defendant contended that the "factual issues concerning [Plaintiff's] actions on July 21, and [Defendant's] response to them, were litigated and decided by the Circuit Court for Worchester County" and thus, this Court must accept those factual findings.  Mot. at 13-14.  Again, because his termination was the only adverse employment action

7

supporting his ADA claim, the claim must fail, Defendant argued, if Plaintiff is barred from challenging the fact that he voluntarily quit.  In a letter sent to the Court after the formal briefing of this motion was complete, Defendant raised what appears to be a fourth argument, that Plaintiff's ADA claim is barred by the doctrine of res judicata.  See June 4, 2009, Letter from Def.'s counsel to Court at 2 ("because [Plaintiff] submitted his ADA claim to binding arbitration he has given up his right to pursue the same claims in a judicial forum under the doctrine of res judicata").

   The Court first addresses Defendant's second argument, i.e., that the CBA mandated the arbitration of Plaintiff's ADA claim.  The Court finds that it does not.  In Pyett, the Supreme Court did affirm that a provision in a collective bargaining agreement that requires employees to arbitrate all statutory discrimination claims is enforceable.  Rejecting the argument that enforcing such a provision represents an impermissible prospective waiver of statutory rights, the Court reasoned that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute, it only submits to their resolution in an arbital, rather than a judicial forum."  129 S.Ct. at 1469 (internal quotations omitted).

While affirming that such arbitration provisions are enforceable, the Court also recognized the distinction between (1) agreements in collective bargaining agreements to submit <u>contractual</u> discrimination claims to arbitration and (2) agreements to submit <u>statutory</u> discrimination claims to arbitration.  Where an arbitrator has "'authority to resolve only questions of contractual rights,' his decision could not prevent the employee from bringing [a statutory] claim in federal court 'regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII.'"  129 S. Ct. at 1467 (<u>quoting</u> <u>Alexander v. Garner-Denver Co.</u>, 415 U.S. 36, 53-54 (1974)).  Furthermore, the Court in <u>Pyett</u> did nothing to alter the longstanding requirement that an agreement to arbitrate statutory antidiscrimination claims must be "'explicitly stated'" in the collective bargaining agreement.  <u>Id.</u> at 1465 (quoting <u>Wright v. Universal Maritime Serv. Corp.</u>, 525 U.S. 70, 80 (1998)).

Here, the Court finds that the CBA does no more than mandate arbitration of contractual discrimination claims.  In Article 5, Defendant contractually binds itself not to discriminate and in Article 6 agrees that, should there be an alleged violation of this provision, this dispute must be submitted to arbitration.  Nowhere in the CBA does it express or

9

imply that claims based on federal statutes must be arbitrated. While the ADA is mentioned in Article 5, it is only for the purpose of providing a shorthand means of defining the term "disability."  CBA, Art. 5 ("The provisions of this Agreement shall be applied equally to all employees . . . without discrimination as to . . . disability as defined in the Americans with Disabilities Act (ADA) . . .").  The Court notes that the CBA here is akin to the collective bargaining agreement in Garner-Denver which was found to only mandate arbitration of contractual claims.  See 415 U.S. at 39 (holding that provision stating "there shall be no discrimination against any employee . . ." along with broad arbitration clause was not agreement to arbitrate statutory claims); cf. Pyett, 129 S. Ct. at 1460 (provision in collective bargaining agreement stating that claims made pursuant to listed federal and state antidiscrimination statutes "shall be subject to the grievance and arbitration procedures [] as the sole and exclusive remedy for violations" was clearly and unmistakably an agreement to arbitrate statutory claims); Safrit, 248 F.3d at 307 (a provision in collective bargaining agreement that stated that company and union agreed not to discriminate, "further agreed that they will abide by all the requirements of Title VII of the Civil Rights Act of 1964," and that "unresolved grievances

10

arising under this Section are the proper subjects for arbitration" was a "clear and unmistakable" agreement to arbitrate Title VII claims).

Given that the arbitration clause in the instant action is limited to contractual discrimination claims, the holding in Gardner-Denver, which remains good law, would appear to refute Defendant's remaining arguments as well.  As summarized by Justice Thomas in Pyett, the Supreme Court held in Gardner-Denver that:

> the employee had not waived his right to pursue his Title VII claim in federal court by participating in an arbitration that was premised on the same underlying facts as the Title VII claim.  Thus, whether the legal theory of preclusion advanced by the employer rested on "the doctrines of election of remedies" or was recast "as resting instead on the doctrine of equitable estoppel and on themes of res judicata and collateral estoppel," it could not prevail in light of the collective-bargaining agreement's failure to address arbitration of Title VII claims.

129 S. Ct. at 1467 (citations omitted).[7]

While the Court concludes that Plaintiff's ADA claim is not barred by the arbitrator's decision, the Court still finds that

---

[7] The Court notes that, while the arbitral decision is not binding on this Court in an absolute sense, were this case to go forward, the arbitral decision would be admissible in this action and could be accorded "such weight as the court deems appropriate."  Gardner-Denver, 415 U.S. at 60.  Where an issue is "solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record," a court may properly accord "great weight" to the arbitrator's decision.  Id., 415 U.S. at 60 n.21.

Plaintiff's claim must be dismissed for failure to state a claim.  A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  Therefore, the court must except all well-pleaded allegations as true and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  Nonetheless, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.  Thus, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 556.

In order to prevail on a claim of constructive discharge, a plaintiff must prove two elements.  He must demonstrate both that the defendant's alleged actions were deliberately done, with the intent to force him to quit, and that his working

conditions were in fact intolerable.  See Bristow v. The Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) ("A constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.") (internal citation omitted).  The deliberateness of an employer's action may be proven by actual or circumstantial evidence.  Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).  The intolerability of working conditions is "assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign - that is, whether he would have had no choice but to resign."  Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996) (citing Bristow, 770 F.2d at 1255).

    Furthermore, the Fourth Circuit has cautioned that [b]ecause the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined.  Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004).  Specifically in the context of a claim of disability discrimination, the Fourth Circuit has held that this Court erred in concluding that an employer had constructively discharged an employee where the employee's "supervisors knew of her handicapped condition but failed to give her the

13

accommodation that she requested and to which she was entitled under the Rehabilitation Act."[8]  Johnson v. Shalala, 991 F.2d 126 (4th Cir. 1993).  The Fourth Circuit opined that such a standard "sweeps too broadly; rather than cabining the doctrine of constructive discharge" and "threatens to convert every failure to accommodate . . . into a potential claim for constructive discharge."  991 F.2d at 131.

Here, Plaintiff bases his constructive discharge claim on a single incident where Defendant failed to accommodate his disability.  He acknowledges in his Amended Complaint that, up until that single incident, Defendant had fully accommodated his diabetes.  Even accepting as true Plaintiff's allegation and drawing all inferences in his favor, the Court cannot find that this allegation could possibly support a constructive discharge claim.  The Court notes that, not only do these allegations not meet the requisite objective standard, i.e., that a reasonable person in Plaintiff's position would have felt compelled to resign, they do not appear to even meet a subjective standard.  By vehemently denying that he ever intended to resign his position in response to this event, he undermines the conclusion

---

[8] The Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. protects federal employees from discrimination on the basis of disability and is construed in pari materia with the ADA.  See Doe v. Univ. of Md. Med. Sys. Corp., 50 f.3d 1261, 1264 n.9 (4th Cir. 1995).

14

that even he felt that this incident made the conditions of his employment intolerable.[9]

Because the Amended Complaint fails to state a claim under the ADA, Defendant's motion must be granted.  A separate order will issue.

                                                              _____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: July 14, 2009

---

[9] By attempting to assert a claim of constructive discharge where he had once denied that he intended to resign, Plaintiff has obviously placed himself in a somewhat untenable position. Nonetheless, the Court must evaluate Plaintiff's claim as framed by the Plaintiff.  Both in his Amended Complaint and his opposition to the motion to dismiss, constructive discharge is the only theory presented to support his ADA claim.

15